UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ALTY ADAMSON,

                    Plaintiff,

         -against-

DETECTIVE MILLER, LIEUTENANT DANIEL
DIVERS, DETECTIVE THOMAS FRANKLIN,
and THE CITY OF NEW YORK,

                    Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-2300 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Alty Adamson, proceeding pro se, brings this action under 42 U.S.C. § 1983 claiming that Defendants Detective Miller, Lieutenant Daniel Divers, Detective Thomas Franklin, and the City of New York (the "City") violated his civil rights during a police lineup on May 4, 2010. (Am. Compl. (Dkt. 11).)[1] Specifically, Plaintiff claims that Divers, Franklin, and Miller violated his right to be free from excessive force; that Miller exhibited deliberate indifference to his medical needs; and that the City should be held liable for breaching various duties it owed to Plaintiff. (See id.; Pl. Opp'n to Mot. for Summ. J. ("Pl. Opp'n") (Dkt. 116).)

      Before the court is Defendants' motion for summary judgment on all counts. For the following reasons, the motion is GRANTED IN PART.

---

[1] Plaintiff's amended complaint also names the New York City Police Department (the "NYPD") as a defendant. (Am. Compl.) Because "the NYPD is a non-suable agency of the City," Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007), the court construes the amended complaint as only raising claims of municipal liability against the City and dismisses the NYPD from this action.

1

## I. BACKGROUND

### A. Facts

On May 4, 2010, Plaintiff was transported from the Nassau County Correctional Facility ("NCCF") to the New York City Police Department's (the "NYPD") 69th Precinct (the "Precinct") to participate in a police lineup. (Defs. 56.1 ¶¶ 1, 4.) At the time, Plaintiff was serving six months at NCCF for resisting arrest and violating his parole. (Id. ¶¶ 2-3.) The Kings County District Attorney's Office (the "KCDA") requested that Plaintiff participate in the lineup due to its belief that there was probable cause that Plaintiff committed first-degree burglary, second-degree assault, and other offenses on August 7, 2009. (See Aff. in Supp. of Mot. for Lineup Order (Dkt. 119-2 at ECF p.4) ¶¶ 4-6.) Plaintiff's transfer from NCCF to the Precinct was ordered by the Kings County Supreme Court, which directed the KCDA and the NYPD to keep Plaintiff "in safe and secure custody for the purpose of conducting the lineup." (See Lineup Order (Dkt. 119-2 at ECF p.7).) The Kings County Supreme Court also appointed Joel Brettschneider as Plaintiff's attorney and ordered him to attend the lineup. (Id. at ECF p.9).

Plaintiff alleges that, while witnesses were viewing the lineup, Franklin placed Plaintiff in a chokehold and Divers punched Plaintiff in his left cheek. (Defs. 56.1 ¶¶ 6-9.) According to Plaintiff, Miller was present during the entire lineup. (Id. ¶ 10.) Brettschneider was present at the Precinct during the lineup, though he was not in the room. (Id. ¶ 5; Pl. 56.1 ¶ 19.) Plaintiff claims that Brettschneider watched these events "in shock" and "screamed at Detective Miller that what [Franklin and Divers were] doing [was] illegal misconduct." (Defs. 56.1 ¶ 11 (quoting Am. Compl. at ECF p.5).) Plaintiff claims that, when the cardboard was removed from the viewing window during the lineup, he heard "some banging and some yelling" and a voice say "stop." (Id. ¶¶ 12-14.)

In a deposition, Brettschneider testified that he did not see anyone beat or hit Plaintiff, nor did he hear any scuffling, arguing, or yelling. (Id. ¶¶ 15-16.) He also testified that you can hear easily through the walls of NYPD precincts. (Id. ¶ 17.) Regarding the incident in question, Brettschneider testified that he did not scream at any point while the witnesses were viewing the lineup and that, if the officers had been doing anything to Plaintiff, Brettschneider would have said something. (Id. ¶¶ 18-19.) Shamin McPhun, a witness who was present to view the lineup, also testified that she did not see any physical force used by any officers against any participants in the lineup, though she did testify that she saw Franklin hold Plaintiff down by putting his hand on Plaintiff's shoulder. (Id. ¶ 20; Pl. 56.1 ¶ 20.)

Plaintiff disputes Defendants' characterization of the witness testimony. He points to affidavits by his father and former sister-in-law, which state that Brettschneider told them that "a big black detective" was holding Plaintiff in a chokehold. (See Pl. 56.1 ¶ 11; Aff. of Arlene L. Murray-Adamson ("Murray-Adamson Aff.") (Dkt. 119-4 at ECF p.2); Aff. of Alty Adamson, Sr. ("Adamson Sr. Aff.") (Dkt. 119-4 at ECF p.3).) He also submits testimony by Candace DeSouza, another witness to the lineup, who testified that Plaintiff was "being restrained" during the lineup. (See Pl. 56.1 ¶ 15; Feb. 29, 2012, Trial Tr. (Dkt. 119-6) 187:5-22.) Plaintiff also argues that Brettschneider's testimony is "incredible" and that Brettschneider has been "trying to dissociate himself" from Plaintiff. (Pl. 56.1 ¶ 18.)

Plaintiff claims that, as a result of the events during the lineup, he had bruises on his arms, neck, face, and throat. (Defs. 56.1 ¶ 21.) Plaintiff states that he asked Miller for medical treatment. (Id. ¶ 22.) He allegedly told Miller that his throat was "killing [him]," spat on the floor in the holding cell area, and told Miller that either his mouth or throat was bleeding. (Id. ¶ 23 (alteration in original).) Plaintiff saw Brettschneider after the lineup and told him, "they

3

don't want to give me medical treatment." (Id. ¶¶ 24-26.) Plaintiff did not ask Brettschneider to get him medical treatment and did not tell him that he had been assaulted. (Id. ¶¶ 27, 30.) Brettschneider did not see any visible injuries on Plaintiff. (Id. ¶ 28.)

After the lineup, Plaintiff was transported back to NCCF. (Id. ¶ 31.) Defendants state that Plaintiff did not see a doctor at NCCF, though Plaintiff states that he was taken to the infirmary and given ibuprofen and salt to gargle with. (Id. ¶ 32; Pl. 56.1 ¶ 32.) Plaintiff was transferred to Rikers Island on May 19, 2010. (Defs. 56.1 ¶ 34.) Plaintiff claims to have filed a personal-injury claim against the City on June 10, 2010, though Defendants note that there is no indication in the record that the Office of the Comptroller ever received this complaint. (Pl. 56.1 ¶¶ 36, 51; see Defs. Reply in Supp. of Mot. ("Defs. Reply") (Dkt. 121) at 7 & n.5.)

A seemingly complete history of Plaintiff's medical treatment following his transfer to Rikers Island follows. On July 26, 2010, Plaintiff was treated at the clinic at Rikers Island because he fell and hurt his head against a bed frame. (Defs. 56.1 ¶ 35.) Medical records revealed that Plaintiff's back was "unremarkable." (Id. ¶ 36.) The following December, Plaintiff complained of mid-lower back pain. (Id. ¶ 37.) An examination on December 2, 2010, revealed that Plaintiff's back had "normal spinal curvature and normal range of motion in all joints." (Id. ¶ 38.) The next day, Plaintiff had an appointment for back pain. (Id. ¶ 39.) The doctor assessed that Plaintiff had a backache and treated it with Robaxin. (Id. ¶ 40.) On December 15, 2010, Plaintiff was treated for lower back pain with Naprosyn. (Id. ¶ 41.) An x-ray was taken of his lumbar spine, which subsequently revealed dextroscoliosis. (Id. ¶¶ 41, 44.) A "straight leg raising test" conducted on December 16, 2010, was negative, "as there was no tenderness to palpation." (Id. ¶ 42.) Plaintiff was treated again for lower back pain two days later. (Id. ¶ 43.) On January 4, 2012, a report on Plaintiff's health revealed "mild degenerative changes" in his

mid-to-lower c-spine. (Id. ¶ 45.) The impression in the report was that Plaintiff's soft tissue was "unremarkable except for degenerative cervical spondylosis." (Id. ¶ 46.) On February 13, 2012, Plaintiff complained of backaches and requested ibuprofen. (Id. ¶ 47.) In September 2013, Plaintiff complained of pain in the back of his left knee. (Id. ¶ 48.) On August 5, 2015, x-rays of Plaintiff's cervical and lumbar spine were ordered. (Id. ¶ 50.) The impression in this report was "spoondylosis, facet arthropathy, muscle spasms, and mild degenerative disease." (Id. ¶ 51; see id. ¶ 49.) Plaintiff complained of left shoulder pain on October 10, 2015. (Id. ¶ 52.)

Plaintiff agrees with Defendants' factual record of his medical history, but notes that they "have not offered any medical rebuttal to show that [the] degeneration in his spine was not caused by the trauma administered by [D]etective Franklin's assault." (Pl. 56.1 ¶ 45; see id. ¶¶ 46, 49.)

B. Procedural History

Plaintiff filed this action on May 18, 2010. (Compl. (Dkt. 1).) In the complaint, Plaintiff identified the defendants as Miller, John Doe Police Officer #1, and John Doe Police Officer #2. (Id.) Plaintiff amended his complaint on August 6, 2010, to add the City and the NYPD as defendants. (Am. Compl.) Franklin (see July 12, 2011, Order (Dkt. 41)) and Divers (see Jan. 24, 2017, Order (Dkt. 62)) were subsequently identified as the John Doe defendants.

On August 18, 2010, Defendants requested a stay of proceedings in this action pending the resolution of state criminal charges against Plaintiff. (See Aug. 18, 2010, Defs. Letter (Dkt. 14).) The court granted Defendants' request (see Aug. 19, 2010, Order (Dkt. 15)) and closed the case for statistical purposes only (Feb. 29, 2012, Order (Dkt. 43)). On September 15, 2016, Defendants informed the court that Plaintiff had been convicted of one count of first-

5

degree burglary and two counts of second-degree assault. (Sept. 15, 2016, Defs. Letter (Dkt. 46)).)

Defendants answered the amended complaint on October 31, 2016. (Answer (Dkt. 52)).) The court reopened the case on December 8, 2016, and proceeded to discovery. (See Dec. 8, 2016, Order (Dkt. 56)).) Judge Bloom closed discovery on October 31, 2017, and, after responding to a number of various discovery-related requests, certified discovery as complete on December 8, 2017. (See Oct. 31, 2017, Order (Dkt. 100); Dec. 8, 2017, Order (Dkt. 106)).)

On January 19, 2018, the court granted Defendants leave to move for summary judgment and set a briefing schedule. (Jan. 19, 2018, Order (Dkt. 107)).) On May 7, 2018, the court denied Plaintiff's request for a sur-reply. (May 7, 2018, Order (Dkt. 110)).) The motion was fully briefed later that day. (See Defs. Mot. for Summ. J. ("Mot") (Dkt. 111); Defs. Mem. in Supp. of Mot. ("Mem.") (Dkt. 112); Pl. Opp'n; Defs. Reply.)

## II.   LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex

6

Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and internal quotation marks omitted).

The court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (emphasis added) (citation and quotation marks omitted). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment. See, e.g., Marks v. Scalabrini, 204 F. Supp. 3d 514, 521 (S.D.N.Y. 2016). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424,

429 (S.D.N.Y. 1995) (emphasis added) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); see Christian v. Powell, No. 16-CV-673 (KBF), 2017 WL 398406, at *2 (S.D.N.Y. Jan. 30, 2017) ("[A] pro se movant for summary judgment must still provide 'a short and plain statement of the claim showing that the pleader is entitled to relief' and show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" (first quoting Fed. R. Civ. P. 8(a)(2), and then quoting Fed. R. Civ. P. 56(a))).

## III. DISCUSSION

Liberally construing Plaintiff's amended complaint, he asserts the following constitutional claims under 42 U.S.C. § 1983: Excessive force against Miller, Divers, and Franklin; and deliberate indifference against Miller. Plaintiff also asserts claims of municipal liability against the City, though he seemingly did not specify the basis for these claims until his memorandum in opposition to Defendants' motion for summary judgment. Defendants have moved for summary judgment as to all claims, which the court GRANTS IN PART.

### A. Excessive Force

Defendants do not argue that Plaintiff's claims do not rise to the level necessary to support excessive-force liability under § 1983. Instead, they submit that summary judgment is proper because Plaintiff's statements regarding the events of May 4, 2010, "are so unbelievable that no reasonable jury would believe them because his claim is unsupported by the evidence." (Mem. at 8; see id. at 5-8.) In the amended complaint, Plaintiff states that Brettschneider "watched in shock" as Plaintiff was assaulted and "screamed at Detective Miller that what [Divers and Franklin were] doing [was] illegal misconduct against Plaintiff." (Id. at 7 (quoting Am. Compl. at ECF p.5).) Defendants point out, however, that Brettschneider testified "that he did not scream at any point when the witnesses were viewing the lineup" and that he did not hear

8

any "scuffling, arguing, or cops yelling." (Id.) They also note that a witness to the lineup "did not see any physical force used by any officers against any participants in the lineup." (Id.)

In response, Plaintiff says that "[i]t is not just [his] word" that supports his version of the facts. (Pl. Opp'n at 3.) He points to Franklin's testimony, as well as that of lineup witnesses Desouza and McPhun, which he argues show that excessive force was applied to Plaintiff during the lineup. (See id. at 8-9.) He also urges the court to ignore Brettschneider's testimony because he and Brettschneider interacted for "less than a minute" following the lineup and Brettschneider, by his admission, "was not looking for any injuries." (Id. at 4.) Plaintiff also seems to insinuate that Brettschneider has been motivated to lie about what transpired at the lineup due to his fear of the NYPD. (See Pl. 56.1 ¶ 18; Pl. Opp'n at 4.)

In evaluating both sides' arguments, the court is mindful that "arguments in a brief are not evidence, and it is evidence rather than allegations that is required at the summary-judgment stage." Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 92-93 (S.D.N.Y. 2017). Additionally, while both Plaintiff and Defendants assert "two starkly contrasting versions" of the same event, this fact "is not in itself sufficient to preclude summary judgment." Krynski v. Chase, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009). "Contradictory testimony establishes a 'genuine' issue for trial only where the conflicting testimony, if credited, would lead to a different legal outcome." Id. After examining the evidentiary record, the court finds that there is no genuine issue of fact regarding Plaintiff's claim of excessive force and so grants Defendants' motion for summary judgment on this ground.

1. Witness Testimony

In his Rule 56.1 Statement, Plaintiff states that Desouza "witnessed" and "testified to" the alleged assault of Plaintiff. (Pl. 56.1 ¶¶ 7, 15; see id. ¶ 6.) Plaintiff mischaracterizes Desouza's

9

testimony. Desouza testified that she saw people standing in the lineup room "behind some of the people that were sitting" and that she saw at least one NYPD officer physically restraining Plaintiff by forcing his head to be placed upright. (Feb. 29, 2012, Trial Tr. 186:14-19, 187:5-18.) As Defendants note, Desouza at no point stated that Plaintiff was punched or put in a chokehold. (Defs. Reply at 3.) Instead, Desouza's statement relates to the fact—admitted by Franklin during his testimony—that Franklin "was trying to make [Plaintiff] sit straight up into his chair" during the lineup. (See Feb. 22 & 23, 2012, Trial Tr. (Dkt. 119-5) 84:14-15.) Franklin testified that this action was necessary because Plaintiff was "holding his head down" and "leaning to the left and to the right on the other people who were sitting and participating in the lineup." (Id. 84:20-23.) Defendants point out that Franklin's testimony is consistent with that of Desouza, who testified that Plaintiff kept putting his head down and that somebody else in the room kept pulling his head back up. (Feb. 29, 2012, Trial Tr. 210:8-11.) The evidentiary record does not support Plaintiff's argument that "the eyewitness testimony of Candace Desouza as well as the testimony of [D]etective Franklin" show that he was assaulted. (See Pl. Opp'n at 3.)

Plaintiff additionally states that McPhun "saw [D]etective Franklin holding [P]laintiff down by his shoulder." (Pl. Opp'n at 8.) It is unclear whether Plaintiff's claim is true—McPhun testified that she saw somebody with "[h]is hand . . . on [Plaintiff's] shoulder," but this answer came in response to the question, "Was [Franklin] holding [Plaintiff] down in any way?" (See Feb. 29, 2012, Trial Tr. 65:7-8.) Regardless, this statement does not corroborate Plaintiff's allegations of being choked and punched.

Finally, Defendants point to Brettschneider's testimony to rebut the claim in the amended complaint that Brettschneider "watched in shock" as Plaintiff was assaulted, and that Brettschnedeir "screamed" that what Miller, Divers, and Franklin were doing was "illegal

10

misconduct." (Mem. at 3-4; see Am. Compl. at ECF p.5.) In response, Plaintiff argues that Brettschneider's testimony is "contradicted" by Franklin's testimony. (Pl. 56.1 ¶ 16.) This is not the case. In his testimony, Franklin stated that he heard a commotion in the lineup room, and that he entered the room and found Plaintiff refusing to participate in the lineup. (Feb. 22 & 23, 2012, Trial Tr. 84:5-8; see id. 88:16-21, 89:15-20, 90:5-6.) The fact that there was a "commotion" in the lineup room does not contradict Brettschneider's deposition testimony that he "did not see anybody beat [Plaintiff]" and that he did not "scream" at any point during the lineup. (See Dep. of Joel H. Brettschneider, Defs. Ex. ("Brettschneider Dep, Defs. Ex.") (Dkt. 115-2) 22:1-3, 49:15-17.) The court rejects Plaintiff's attempt to have the court ignore Brettschneider's "incredible" deposition testimony. (See Pl. 56.1 ¶ 18.) Plaintiff mischaracterizes Brettschneider's testimony by claiming that Brettschneider "is trying to disassociate himself from [P]laintiff [by c]laiming he was not [P]laintiff's attorney for about eleven months." (Id.) In his testimony, Brettschneider acknowledged representing Plaintiff at the lineup and, subsequently, filing a motion that Plaintiff be permitted to appear before a grand jury. (See Dep. of Joel H. Brettschneider, Pl. Ex. ("Brettschneider Dep., Pl. Ex.") (Dkt. 119-10) 43:17-46:11.) Brettschneider testified that he did not represent Plaintiff at his arraignment and that he did not try Plaintiff's underlying criminal case. (Id. 43:10-11, 46:13-14.) The fact that Brettschneider may not have a perfect memory of his interactions with Plaintiff (see id. 43:9-11, 46:13) does not require his entire testimony to be discounted.

In sum, the court's review of the witness testimony in this case does not show a genuine issue for trial because the testimony is not actually in conflict.

2. Affidavits

"[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). (See Defs. Reply at 4.) Therefore, on a motion for summary judgment, the court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory sentences." Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999); accord New World Sol'ns, Inc. v. NameMedia Inc., 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015). "'[P]ersonal knowledge' includes basic, commonsensical inferences, so long as they are 'grounded in observation or other first-hand personal experience" and are not 'flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" In re Bridge Constr. Servs. of Fla., Inc., 39 F. Supp. 3d 373, 383 (S.D.N.Y. 2014) (quoting Visser v. Packing Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991)); see Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1200 (10th Cir. 2006) ("Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." (citation and internal quotation marks omitted)).

In opposition to the motion for summary judgment, Plaintiff submits two affidavits claiming that Brettschneider—contrary to his testimony—did see a police officer choke Plaintiff during the lineup. (Compare Murray-Adamson Aff. and Adamson Sr. Aff. with Defs. 56.1 ¶ 15.) The affiants, both family members of Plaintiff's, state that Brettschneider told them that he saw "a big black detective using a choke hold" on Plaintiff. (Murray-Adamson Aff.; accord

12

Adamson Sr. Aff.) Murray-Adamson additionally states that Brettschneider "intimated" to her that he would not be able to continue to represent Plaintiff "because [Brettschneider was] going to have to be a witness later on down the line." (Murray-Adamson Aff.)

The court agrees with Defendants that the affidavits, insofar as they refer to statements supposedly made by Brettschneider, are inadmissible hearsay. (See Defs. Reply at 5.) Neither Murray-Adamson nor Adamson Sr. saw an officer put Plaintiff in a chokehold, nor did either of them observe Brettschneider witness the alleged chokehold. Accordingly, these affidavits cannot be used to make a disputed issue of fact out of Brettschneider's statement that he did not see anybody physically assault Plaintiff during the lineup.

\* \* \*

Plaintiff submits that "a rational jury would believe that [he] was subjected to excessive force during the lineup." (Pl. Opp'n at 3.) Because the court disagrees, Defendants' motion for summary judgment on this claim is granted. For the same reason, the court also dismisses the failure-to-intervene claim against Miller. (See Defs. Reply at 2 n.3.)

B. **Deliberate Indifference**

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); see Farmer v. Brennan, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); see also Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of

13

the Fourteenth Amendment . . . .").[2] "There are two elements to a claim of deliberate indifference to a serious medical condition." Caiozzo v. Korman, 581 F.3d 63, 72 (2d Cir. 2009), overruled on other grounds by Darnell, 849 F.3d 17. "The first requirement is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)). Evaluation of the objective prong requires inquiring into "whether the prisoner was actually deprived of adequate medical care" and "whether the inadequacy in medical care is sufficiently serious." Salahuddin, 467 F.3d at 279-80; see Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) ("Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." (citation and internal quotation marks omitted)). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." Spavone, 719 F.3d at 138.

Defendants state that Plaintiff cannot meet either prong of the deliberate-indifference inquiry. As to the objective prong, they argue that Plaintiff has not shown that he sustained a sufficiently serious injury on May 4, 2010. As to the subjective prong, they submit that Miller did not act with a sufficiently culpable mindset because he believed that Plaintiff required no medical treatment. The court agrees that no reasonable juror could find that Plaintiff sustained a sufficiently serious injury to support his claim of deliberate indifference, and so grants the motion for summary judgment on this ground.

---

[2] Regardless of whether Plaintiff's claim arises under the Eighth or Fourteenth Amendment (see Pl. Opp'n at 10), the standard for establishing an objective deprivation of medical care is the same. See Darnell, 948 F.3d at 30. Accordingly, because the court grants the motion for summary judgment based on its analysis of the objective prong of Plaintiff's deliberate-indifference claim, the court need not dwell on the distinction between these amendments.

During his deposition, Brettschneider testified that he "did not see any injuries on [Plaintiff]" and that, if Plaintiff did have any visible injuries, Brettschneider would have noticed them. (See Brettschneider Dep., Defs. Ex. 24:2-4, 43:21-23.) Plaintiff's response to these statements is twofold: first, he points to Brettschneider's statement that Brettschneider was not "looking for any [injuries]"; and second, he notes that Brettschneider "is not a doctor and could not see if there were any internal injuries to [P]laintiff." (Pl. 56.1 ¶¶ 28-29 (citing Brettschneider Dep., Pl. Ex. 24:3-4); see Pl. Opp'n at 4, 12.) Whether or not Brettschneider was <u>looking</u> for any injuries, the court agrees that Brettschneider would have noticed if Plaintiff had bruises to his arms, neck, face, and throat, and if he were spitting up blood. (See Mem. at 7.) Plaintiff is obviously correct that Brettschneider would not necessarily have noticed Plaintiff's internal injuries; however, Brettschneider's testimony does not refute Plaintiff's allegation that he was injured at all, just that he had visible injuries.

Plaintiff claims that, the evening he returned to NCCF from the Precinct, he was "seen by a nurse and given ibuprofen and salt to gargle with." (Pl. 56.1 ¶ 32.) Courts frequently hold that a medical condition requiring treatment with a pain reliever is not "sufficiently serious" for purposes of the Eighth Amendment. See Bunting v. Conway, No. 04-CV-731, 2010 WL 5332280, at *6 (W.D.N.Y. Nov. 1, 2010), R&R adopted, 2010 WL 5313308 (Dec. 20, 2010); Salaam v. Adams, No. 03-CV-517, 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 29, 2006) (adopting R&R); Heisler v. Kralik, 981 F Supp. 830, 834 (S.D.N.Y. 1997). Accordingly, Plaintiff's statement that he was prescribed ibuprofen for his injuries is not enough to make out a sufficiently serious injury.

Finally, Plaintiff's medical records do not support his contention that he had a sufficiently serious medical condition on May 4, 2010. Following the day of the lineup, Plaintiff next sought

15

medical treatment on July 26, 2010, when he was injured falling against a bed frame. (See Defs. 56.1 ¶ 35.) There is no record of his having complained about back pain until December 2, 2010. (See id. ¶ 37.) Following a number of tests, the medical staff concluded that Plaintiff had mild degenerative disc disease. (See id. ¶¶ 45-46, 49, 51.) The only portion of the factual record that Plaintiff cites for the proposition that any of his medical problems stemmed from injuries sustained at the lineup is a January 4, 2012, medical record in which a doctor noted that Plaintiff had a deviated trachea in his lower neck and thoracic inlet. (Jan. 4, 2012, Req. for Radiological Examination (Dkt. 119-7 at ECF p.13); see Pl. 56.1 ¶ 46.) This medical record, standing alone, does not support the contention that Plaintiff's spondylosis "is a direct result of [D]etective Franklin's use of a chokehold" on Plaintiff. (See Pl. 56.1 ¶ 46.) Furthermore, contrary to Plaintiff's statement, Defendants need not "offer[] any adverse medical opinion to rebut [his] claim of how he received his injuries." (See Pl. Opp'n at 14; see also Pl. 56.1 ¶ 49.) In the case cited by Plaintiff for this proposition, Rockwood v. Astrue, 614 F. Supp. 2d 252 (N.D.N.Y. 2009), the court allowed that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," but still required the disability claimant in question to present additional evidence regarding the severity of his injuries. Id. at 271. Here, Plaintiff has offered no such evidence. See also, e.g., Malsh v. Austin, 901 F. Supp. 757, 762 (S.D.N.Y. 1995) (noting that the plaintiff bears the burden of demonstrating that an alleged medical deprivation is sufficiently serious). As Defendants point out, Plaintiff's decision not to seek medical attention at NCCF or Rikers Island for his alleged injuries—despite knowing how to access medical treatment at these facilities—undermines his argument that he was seriously injured during the lineup or that he "has been complaining about his injuries since May 4, 2010." (See Defs. Reply at 7 (quoting Pl. 56.1 ¶ 51).)

16

Where a plaintiff's Eighth Amendment claim depends on a showing that he sustained serious injury, he must offer more evidence than his own testimony. See Jouthe v. City of New York, No. 05-CV-1374 (NGG), 2009 WL 701110, at *15 (E.D.N.Y. Mar. 10, 2009). Because Defendants are correct that Plaintiff's argument that the degeneration in his back is connected to the injuries he allegedly sustained on May 4, 2010, is unsupported by any evidence aside from Plaintiff's own opinion (Defs. Reply at 9), the court holds that Plaintiff has not met the objective prong of the deliberate-indifference inquiry. Accordingly, the court grants summary judgment for Miller as to Plaintiff's claim of deliberate indifference. See Brown v. McElroy, 160 F. Supp. 2d 699, 706 n.4 (S.D.N.Y. 2001) ("The subjective prong need not be considered since the conditions of confinement alleged are not sufficiently serious . . . .").

### C. Other Constitutional Claims

In his opposition brief, Plaintiff raises a variety of new constitutional claims against Miller, Divers, and Franklin, including violations of his rights under the Fourth and Sixth Amendments. (See Pl. Opp'n at 6, 8, 11.) Because "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," the court will not consider these additional claims, as they were not pleaded in the amended complaint. Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (citation and quotation marks omitted); see also id. at 407-08 (collecting cases).

### D. Municipal Liability/Failure to Protect

As Defendants point out, the amended complaint does not contain any "factual allegations . . . regarding the City itself . . . other than to name the City as a defendant." (Mem. at 12.) Nevertheless, while Defendants move for summary judgment on the grounds that Plaintiff has not established municipal liability against the City under the requirements of Monell

17

v. Department of Social Services, 436 U.S. 658 (1978), Plaintiff's opposition does not argue that he has a Monell claim against the City. (See Mem. at 11-13; Pl. Opp'n at 16.) Instead, he claims that the City violated a duty of protection which it owed to him pursuant to the Kings County Supreme Court's lineup order. (See Pl. Opp'n at 16.) He also seems to assert a distinct claim that the City violated a duty of care it owed to him as a prisoner.

In a footnote to their reply brief, Defendants argue that these claims are both untimely and directed against the wrong municipal body. (See Defs. Reply at 1 n.2.) Such a cursory argument falls well short of what the court needs in order to give full consideration to Plaintiff's claims against the City. Accordingly, the court orders the City to submit a memorandum of law of no more than five pages setting forth its argument for why summary judgment is proper as to Plaintiff's claims of municipal liability, particularly in light of the analysis and conclusions contained in this memorandum and order.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Defendants' motion for summary judgment (Dkt. 111). The Clerk of Court is respectfully DIRECTED to enter judgment in favor of Defendants Miller, Divers, Franklin, and the NYPD and dismiss them from this case. The City is ORDERED, by no later than November 5, 2018, to submit a memorandum of law of no more than five pages setting forth its argument for why summary judgment is proper as to Plaintiff's claims of municipal liability as asserted in his opposition to the motion for summary judgment. Plaintiff is not required to submit a response to the City's forthcoming memorandum; if, after reviewing the City's memorandum, Plaintiff feels it is necessary to submit a response, he may do so in writing by no later than November 26, 2018. The Clerk of Court is further respectfully DIRECTED to send a copy of this memorandum and order to pro se Plaintiff at his address of record by certified mail, return receipt requested.

SO ORDERED.

Dated: Brooklyn, New York
October 12, 2018

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge